J-S33016-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| TEQUILA HELEN JONES | |
| Appellant | No. 1054 WDA 2015 |

Appeal from the Judgment of Sentence May 14, 2015
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0013357-2014

BEFORE:  GANTMAN, P.J., OLSON and FITZGERALD,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED MAY 27, 2016**

Appellant, Tequila Helen Jones, appeals from the judgment of sentence entered on May 14, 2015, as made final by the denial of a post-sentence motion on June 10, 2015, following her bench trial conviction for receiving stolen property,[1] possessing a firearm without a license,[2] and three motor vehicle summary offenses.[3]  Upon review, we reverse Appellant's conviction for receiving stolen property, vacate the judgment of sentence for that offense, and affirm her remaining convictions and sentence in all other respects.

---

[1]  18 Pa.C.S.A. § 3925.

[2] 18 Pa.C.S.A. § 6106(a).

[3]  Appellant does not challenge her summary offense convictions on appeal.

*Former Justice specially assigned to the Superior Court.

The trial court summarized the facts of this case as follows:

At trial, Homestead Police Officer James Wintruba testified that on September 20, 2014, at approximately 2:00 a.m., he observed a vehicle traveling which he described as suspicious in nature. Officer Wintruba recognized the car as belonging to Appellant, and believed that Appellant did not possess a valid license and that the vehicle she drove was not registered or insured. He passed the vehicle and observed the driver, Appellant, whom he recognized as the owner of the vehicle. The [o]fficer ran the registration plate as he passed the vehicle and it came back cancelled for insurance reasons. Before he was able to initiate a traffic stop, he was called away to another matter. Officer Wintruba testified that he observed the same vehicle later that evening, and attempted to initiate a traffic stop. Appellant's vehicle continued for three blocks before stopping. The [o]fficer observed Appellant, now in the passenger seat, and an unknown male in the driver's seat (later identified as Frank Key[e]s). The [o]fficer observed Appellant turning left and right, disappearing behind the seat and then reappearing. Officer Wintruba suspected Appellant had placed something on the rear floor.

Upon the [o]fficer's approach to the vehicle, Appellant continued to move frantically. The driver, Keyes, appeared to be intoxicated. Keyes' eyes were squinted, his movements were lethargic and he reeked of alcohol. Corporal Jeff Luptak arrived as backup shortly after the traffic stop and took an observation point while Appellant searched her glove box for the registration. While Officer Wintruba was speaking with Keyes, Corporal Luptak shouted, "Gun, gun. There is a gun in the car." Appellant and Keyes were quickly removed from the vehicle. Officer Wintruba observed a small black semiautomatic weapon on the passenger seat toward the center of the vehicle, the area from which Appellant was removed. Officer Wintruba later clarified that the gun was recovered from the area under Appellant's left thigh. Neither Appellant nor Keyes had a valid license to carry a firearm. Officer Wintruba testified that the gun was owned by Patrick Schmidt who had reported it as stolen. One fingerprint was recovered on the gun but it did not match Appellant or Keyes. Appellant

- 2 -

made several statements at the scene that she was unaware of and quite surprised by the presence of a gun in the car. Keyes stated he switched places with Appellant because he felt she was too drunk to drive him home.

Corporal Luptak testified that when he arrived at the scene, he did not initially observe the firearm. He testified that he was at the passenger side window when he saw the handgun under Appellant's leg as Appellant moved around inside the vehicle. Corporal Luptak testified that he saw the gun on the passenger seat with the barrel facing the driver's side. He alerted the other [o]fficer and removed Appellant from the vehicle.

Schmidt testified that he bought a 9mm caliber Kel-Tee pistol with a serial number S2526 at a gun show in January 2014. Schmidt identified the gun that was recovered from Appellant's car as the same weapon he purchased at the gun show. He testified that the gun had been stolen from him and that he had not given Appellant or Keyes permission to possess the firearm.

Trial Court Opinion, 1/15/2016, at 3-4 (record citations omitted).

The trial court held a bench trial on May 14, 2015. At its conclusion, the trial court convicted Appellant of the aforementioned crimes. Appellant waived her right to the preparation of a pre-sentence investigation report and proceeded directly to sentencing. The trial court sentenced Appellant to three years of probation for possession of a firearm (with the first year electronically monitored) and a concurrent term of three years' probation for receiving stolen property. The summary offenses resulted in a fine, but no further penalties. This timely appeal resulted.[4]

---

[4] Appellant filed a post-sentence motion *nunc pro tunc* on June 3, 2015, arguing the convictions were against the weight of the evidence presented.
*(Footnote Continued Next Page)*

On appeal, Appellant presents the following issue for our review:

I.    Were the verdicts of guilty for receiving stolen property and possession of a firearm without a license [] rendered against the weight of the evidence presented?

Appellant's Brief at 4.

Appellant claims that her convictions for receiving stolen property and possessing a firearm without a license were against the weight of the evidence presented by the Commonwealth.  Appellant claims, "the testifying officers stated [she] was highly intoxicated [and] seemed shocked when told there was a gun present."  *Id.* at 11.  Appellant further avers that the fingerprint found on the firearm excluded her and that Mr. Keyes "admitted that he sat in the passenger's seat where the gun was found just prior to the traffic stop."  *Id.*  Appellant claims that the Commonwealth did not prove she exercised conscious dominion over the firearm because "Officer Wintruba specifically testified that the gun was **not** where he saw [Appellant] leaning forward, and was within Mr. Keyes' arm-length."  *Id.* at 14 (emphasis in original). Thus, based upon the totality of circumstances, Appellant suggests, "Mr. Keyes placed the gun under her leg immediately

*(Footnote Continued)* ─────────────

The trial court accepted the late filing, but denied relief on the merits by order entered on June 10, 2015.  On July 10, 2015, Appellant filed a notice of appeal.  By order filed on July 16, 2015, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  After the grant of an extension to obtain the necessary trial transcripts, Appellant complied timely on September 22, 2015.  The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on January 15, 2016.

- 4 -

following the stop." *Id.* at 18. Although Appellant concedes she had the power to control the firearm, she maintains, under the circumstances established at trial, the determination that she had the intent to exercise control over the weapon was against the weight of the evidence. *Id.* at 16. Finally, Appellant claims that because she did not know the firearm was under her leg, she could not have known it was stolen. *Id.* at 18-19.

Our Supreme Court has set forth our standard of review as follows:

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence*.* Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for

- 5 -

granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, [the Pennsylvania Supreme Court has] explained:

> The term discretion imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (internal citations, quotations, and emphasis omitted). "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015).

Possessing a firearm without a license, a third-degree felony, is statutorily defined as "any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license[.]" 18 Pa.C.S.A. § 6106(a).

Here, in rendering its decision, the trial court noted:

> [Appellant] was in actual possession of the gun. It was her car. Even by her own statement she claims that she was too drunk to drive and scooted over to the passenger side. One would have to believe that the gun when she scooted over did not move but remained under her left leg. And the testimony of the officer was that he put his light on immediately, did not see much motion on the part of the driver[,] but somehow a lot of motion on the part of the passenger.
>
> Whether [Appellant] was trying to hide it under the seat and failed or whatever she was moving around trying to do, it's inconceivable she could not feel a gun under her thigh in the car seat or see it and her statements to the contrary are just not credible. For [Keyes] to have reached over and wedged it there after pulling the car over is not impossible, but does seem highly unlikely that he would be able to lift her leg and stick a gun under it.

N.T., 5/14/2015, at 81-82. Because Appellant was in physical contact with the firearm as she sat on it, the trial court determined that "Appellant was in actual possession of the gun." Trial Court Opinion, 1/15/2016, at 6. Moreover, the trial court stated that the location of the gun "positioned with the grip facing [Appellant]" and the barrel facing the driver's side, supported the inference that she, not Keyes, "was actively trying to hide the gun from police." *Id.* at 6-7; *see also* N.T., 5/14/2015, at 52-53.

We discern the trial court did not abuse its discretion in ruling on Appellant's weight claim with regard to possessing a firearm without a license. The Commonwealth presented evidence that Appellant was sitting directly on the firearm when police directed her out of the vehicle. To find under the circumstances that Appellant exercised dominion and control over

- 7 -

the firearm simply does not shock the conscious of this Court. Moreover, the trial court was free to reject Appellant's statements to police, wherein she claimed she was unaware of the presence of the gun. We will not disturb that credibility determination. Finally, there is no dispute that Appellant did not have a license to carry a firearm. Thus, we conclude Appellant's firearm conviction was not against the weight of the evidence and affirm that conviction.

Thereafter, based upon all of the evidence presented, the trial court circumstantially "inferred that [Appellant] knew or had reason to believe the gun was not legally possessed" to support Appellant's conviction for receiving stolen property. Trial Court Opinion, 1/15/2016, at 7.

"A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S.A. § 3925.

Our "Supreme Court [has] indicated that mere possession of stolen property, without more, is not sufficient circumstantial evidence to support an inference of guilty knowledge." **Commonwealth v. Robinson**, 128 A.3d 261, 267 (Pa. Super. 2015) (*en banc*), *citing* **Commonwealth v. Williams**, 362 A.2d 244, 248 n.7 (Pa. 1976). In **Robinson**, this Court determined that a factfinder "may infer guilty knowledge from evidence of recency, [in other words, that the goods were recently stolen,] which in turn may require the

appellant to offer an alternative explanation for [her] possession of the stolen item." **Robinson**, 128 A.3d at 267. "It is the Commonwealth's circumstantial evidence of guilty knowledge (recency) that compels the need for an explanation, since in the absence of an explanation the jury may infer guilty knowledge beyond a reasonable doubt based upon the Commonwealth's evidence." **Id.** at 267-268. "Even if the accused offers an explanation, the [factfinder] may nevertheless find it unsatisfactory and reach a finding of guilty knowledge based upon the recency of the theft." **Id.** at 268. Moreover, "[e]vidence of the recency of the theft is not the only basis for the inference of guilty knowledge." **Id.** "Circumstantial evidence of guilty knowledge may include, *inter alia*, the place or manner of possession, alterations to the property indicative of theft, the defendant's conduct or statements at the time of arrest (including attempts to flee apprehension), a false explanation for the possession, the location of the theft in comparison to where the defendant gained possession, the value of the property compared to the price paid for it, or any other evidence connecting the defendant to the crime." **Id.**

Here, the Commonwealth presented the testimony of the firearm owner, Patrick Schmidt. N.T., 5/14/2015, at 64-67. Schmidt purchased the firearm at a gun show in January 2014. **Id.** at 64. He reported the firearm stolen on June 28, 2014. **Id.** at 66. Police recovered the firearm on September 20, 2014. **Id.** at 16. The serial number was intact and traced to

Schmidt. *Id.* at 34. Police testified that Appellant "was quite shocked and surprised" when the firearm was recovered. *Id.* at 45.

In this case, police recovered the firearm three months after Schmidt reported it stolen. Generally, we have determined that three months does not qualify as recent under the aforementioned standards. *See Robinson*, 128 A.3d at 268-269 (collective cases discussing recency in inferring guilty knowledge). Additionally, the Commonwealth did not present circumstantial evidence of Appellant's guilty knowledge. There were no signs the weapon had been altered to indicate it had been stolen, Appellant did not flee or offer a false explanation for the possession, and there was no other evidence connecting Appellant to theft of the firearm. Hence, we conclude Appellant's conviction for receiving stolen property cannot stand and we are constrained to reverse it and vacate the judgment of sentence for that offense.

An appellate court may affirm, modify, vacate, set aside or reverse any order brought before it and **may** remand the matter. 42 Pa.C.S.A. § 706 (emphasis added). "If our disposition upsets the overall sentencing scheme of the trial court, we must remand so that the court can restructure its sentence plan." *Commonwealth v. Thur*, 906 A.2d 552, 569 (Pa. Super. 2006) (citation omitted). "By contrast, if our decision does not alter the overall scheme, there is no need for a remand." *Id.* In this case, the trial court sentenced Appellant to three years of probation for possession of a firearm, with a concurrent term of three years' probation for receiving stolen property. Since Appellant's sentence remains the same despite vacating the

receiving stolen property sentence, a remand for resentencing is unnecessary.

Conviction for receiving stolen property reversed. Judgment of sentence for receiving stolen property vacated. Remaining convictions and judgment of sentence affirmed in all other respects.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/27/2016